IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>VERTUIES WALL (7) | CRIMINAL ACTION FILE NO.<br><br>1:16-CR-145-TWT-JKL-7 |

## **NON-FINAL REPORT AND RECOMMENDATION**

Pending before the Court is Defendant Vertuies Wall's Motion to Suppress Evidence. [Doc. 1278.] Wall moves to suppress evidence that the government seized pursuant to a search warrant directed to Facebook, Inc. on the grounds that the warrant failed to comply with the particularity requirement of the Fourth Amendment to the United States Constitution. The government opposes the motion. [Doc. 1353.] Wall has not filed a reply. For the following reasons, the Court finds that regardless of whether the warrant was sufficiently particularized, it falls within the *Leon* good-faith exception to the exclusionary rule. Accordingly, it is **RECOMMENDED** that Wall's motion to suppress be **DENIED**.

## I. BACKGROUND

Wall is charged in this case with one count of RICO conspiracy arising out of his alleged involvement with the Gangster Disciples organization, which the government alleges operated as a racketeering enterprise as defined by 18 U.S.C. § 1961(4).  [*See* Doc. 1.]  The indictment alleges, among other things, that on or about December 12, 2014, Wall, co-defendant Dereck Taylor (who allegedly provided security for Wall), and other Gangster Disciples met outside the Wings Café in Macon, Georgia, a nightclub known to be frequented by members of a rival gang, the Crips.  [*Id.* at 31.]  Before entering the nightclub, Taylor allegedly retrieved a firearm from Wall.  [*Id.*]  Wall, Taylor, and other Gangster Disciples then allegedly entered the nightclub and provoked an altercation with the Crips.  [*Id.*]  Allegedly, Crips gang members retaliated, and during the exchange, a Gangster Disciples member, M.P., shot and killed a Crips gang member.  [*Id.*]  More gunfire was exchanged, killing two other individuals and injuring three more.  [*Id.*]  The following day, Wall allegedly told another Gangster Disciples member, D.T., to arrange for a false police report to be made stating that the handgun used in the shooting had been stolen before the shooting at Wings Café, despite the fact that Wall possessed that firearm during the shooting.  [*Id.* at 32.]

Approximately six months later, on June 16, 2015, FBI Special Agent Charles Pfeiler applied for and obtained a search warrant from a U.S. Magistrate Judge in the Middle District of Georgia for information associated with Wall's Facebook account, as well as the Facebook accounts of other Gangster Disciples. [Docs. 1278-1 (Application for Search Warrant for Information relating to Wall's and other Gangster Disciples' Facebook IDs), 1278-2 (Affidavit in Support of Application for Search Warrant), 1278-3 (Search and Seizure Warrant for Information relating to Facebook IDs).] In his search warrant affidavit, SA Pfeiler provided background information about the Gangster Disciples and Wall, and reported specifically that he had obtained pictures of Wall wearing clothing with gang-related symbols and that Wall held a position of authority in the Macon "count" or local subgroup of the Gangster Disciples. [Doc. 1278-2 ¶ 7, 8(a).] SA Pfeiler also summarized Wall's alleged involvement with the Wings Café shooting. [*Id.* ¶¶ 9-10.]

SA Pfeiler then detailed how members of the Gangster Disciples used social media, and Facebook in particular, to communicate and promote gang activities. [Doc. 1278-2 ¶ 11.] In addition, he described Facebook's features, the types of user-related information Facebook maintains, and how users utilize Facebook to

3

communicate, post videos and photographs, and interact with each other. [*Id.* ¶¶ 13-32.]

SA Pfeiler's affidavit and Attachment B thereto set out a two-stage process for obtaining and seizing information.[1] [Doc. 1278-2 ¶ 33; *see also id.* at 19-22 (Attachment B).] Under Section I of Attachment B, Facebook was directed to collect and disclose to the government essentially all information relating to Wall's Facebook account within Facebook's possession, custody, or control, regardless of date or subject matter. [*Id.* at 19-21 (Attachment B, Section I).] Pursuant to Section II of Attachment B, the warrant then authorized the government to seize from the data that Facebook produced information that "constitute[d] fruits, evidence and instrumentalities of violations of [18 U.S.C. §§ 521, 924(j)(2), and 1959] . . . from a January 1, 2014 to the present," including:

> (a) All communications related to the sale of illegal drugs, criminal street gang activity, violent crime, and all communications between co-conspirators of this case. Any communication that documents preparatory steps taken in furtherance of criminal activity.

---

[1] The warrant incorporates by reference an "Attachment B", which was presumably identical to Attachment B to SA Pfeiler's affidavit. [*See* Doc. 1278-3 at 1 (Search and Seizure Warrant, referring to "Attachment B" for a description of the property to be seized).]

> (b) The identity of the person(s) who created or used [Wall's] user ID, including records that help reveal the whereabouts of such person(s).
>
> (c) The identity of the person(s) who communicated with [Wall's] user ID about matters relating to drug trafficking, criminal street gang activity, violent crime, and the Wing's Café Shooting, including records that help reveal their whereabouts or gang affiliation.
>
> (d) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;
>
> (e) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation; [and]
>
> (f) The identity of the person(s) who created or used [Wall's] user ID, including records that help reveal the whereabouts of such person(s).

[*Id.* at 21-22 (Attachment B, Section II).]

On June 16, 2015, the FBI executed the warrant, and in response, Facebook produced a PDF reflecting information from Wall's account from January 1, 2014 through June 16, 2015 (the date of the warrant). [Doc. 1278-3 at 2 (Warrant Return with Inventory indicating that Facebook produced a PDF); 1353-1 (copy of Facebook's production indicating that date range of production).]

In his motion to suppress, Wall argues based on dicta in *United States v. Blake*, 868 F.3d 960 (11th Cir. 2017), the warrant collecting and seizing data associated with his Facebook account was constitutionally defective because it was not sufficiently particular. [Doc. 1278 at 4-7.] The government responds that even if the dicta in *Blake* were binding precedent on this Court, the warrant in this case was sufficiently particularized. [Doc. 1353 at 3-15.] Alternatively, the government argues that the officers who executed the warrant acted in good faith; thus, suppression should be denied under the good-faith exception to the exclusionary rule. [*Id.* at 16-19.]

## II.  DISCUSSION

The Fourth Amendment provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.  When executing a search and seizure warrant, law enforcement officers must comply with all four of the requirements of the Fourth Amendment: "(1) [the warrant] must be based on probable cause, (2) the probable cause must be supported by sworn testimony or an affidavit, (3) the place to be searched must be described with particularity, and (4) the evidence to be seized

must be particularly described." *United States v. Brown*, 596 F. Supp. 2d 611, 624 (E.D.N.Y. 2009) (citing *Groh v. Ramirez*, 540 U.S. 551, 557 (2004)). The exclusionary rule, in turn, forbids the use of evidence obtained in violation of the requirements of the Fourth Amendment. *Herring v. United States*, 555 U.S. 135, 139 (2009)

In *United States v. Leon*, 468 U.S. 897 (1984), however, the Supreme Court recognized the good-faith exception to the exclusionary rule for searches conducted pursuant to warrants. Observing that the purpose of the exclusionary rule is to deter unlawful police conduct, the Court found that this purpose would not be served, and the exclusionary rule should not be applied, when an officer, acting with objective good faith, has obtained a search warrant from a judge and acted within its scope. *See Leon*, 468 U.S. at 920-21. Nonetheless, the *Leon* Court noted four situations in which the suppression of evidence would still be appropriate: (1) when the judicial officer issues the warrant on a deliberately or recklessly false affidavit; (2) when the judicial officer wholly abandons his judicial role; (3) when the warrant is issued on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) when the warrant is so facially deficient that an officer could not reasonably presume it to be valid. *Id.* at 923.

In *Blake*, relied on by Wall, the FBI applied for and obtained search warrants for defendant Tara Jo Moore's Facebook account that, similar to the case at bar, required Facebook to disclose virtually every type of data associated with Moore's account, and then after that disclosure, authorized the government to seize information that constituted fruits, evidence, and instrumentalities of a specified crime from that cache of data. *Blake*, 868 F.3d at 966-67. The Eleventh Circuit expressed its concern that this two-stage procedure violated the particularity clause and essentially amounted to "the internet-era version of a 'general warrant.'" *Id.* at 974. Nonetheless, the court did not decide whether the Facebook warrants at issue violated the Fourth Amendment because the warrants fell within the *Leon* good-faith exception. *Id.* Specifically, the court found (1) that the warrants were supported by probable cause and (2) that whether or not they violated the particularity requirement was "not an open and shut matter." *Id.* at 975 ("[I]t is a close enough question that the warrants were not so 'facially deficient' that the FBI agents who executed them could not have reasonably believed them to be valid.").

In the case at bar, the Court need not decide whether the warrant violated the particularity requirement because the warrant falls within the *Leon* good-faith exception. *See United States v. Panky*, No. 4:17-cr-23-11-HLM-WEJ, 2017 U.S. Dist. LEXIS 205342, at *4-6 (N.D. Ga. Nov. 28, 2017), *report and*

*recommendation adopted*, 2017 U.S. Dist. LEXIS 205123, 2017 WL 6372242 (N.D. Ga. Dec. 13, 2017) (declining to consider whether search warrant for data from Facebook violated the Fourth Amendment because warrant fell within *Leon* exception).  Here, Wall makes no argument that the warrant was not supported by probable cause, and as discussed above, SA Pfeiler sufficiently described probable cause to believe that Wall's Facebook account would yield evidence of alleged criminal activity.  Likewise, it cannot be said that the warrant was so facially deficient that the executing officers could not have presumed it to be valid.  The warrant was issued and executed in June 2015, over two years before *Blake* was decided.  *See also Panky*, 2017 U.S. Dist. LEXIS 205342 at *6 ("This timing . . . means that there was nothing in way of recent case law to alert authorities to the fact that this warrant may have been questionable.").  Moreover, the warrant was more constrained in time in that it limited the data seized to specific items during a specific time period,[2] whereas the warrants at issue in *Blake* apparently did not

---

[2] The Court notes that the temporal limitation described in SA Pfeiler's affidavit and Attachment B appears to have been applied only to the review and/or "seizure" of specific information from the large cache of data aggregated, copied, and disclosed by Facebook.  [See Doc. 1278 ¶ 33 (Pfeiler Aff.), at 19-22 (Attachment B).]  To better address the concerns identified in *Blake* and align more directly with the *Blake* Court's recommendations, that temporal restriction should have been applied to the initial gathering, aggregation, copying, and disclosure of

cabin the request to a particular time period at all.  *See Blake*, 868 F.3d at 966-67, 974.  As a result, agents who executed the warrant in this case were essentially in the same position as those in *Blake* and *Panky—i.e.,* they had no reason to suspect that a warrant might violate the Fourth Amendment's particularity requirement.[3]  Accordingly, the motion to suppress should be **DENIED**.

## III. CONCLUSION

For the following reasons, it is **RECOMMENDED** that Vertuies Wall's Motion to Suppress Evidence [Doc. 1278] be **DENIED**.

There are no matters pending before me for Defendant Wall (7), and I have not been advised of any impediments to the scheduling of a trial as to this

---

data, not simply upon the review and seizure of information from the data cache.  *See Blake*, 868 F.3d at 974.

[3] *United States v. Matter of Search of Info. Associated With Fifteen Email Addresses Stored at Premises Owned*, No. 2:17-CM-3152-WC, 2017 WL 4322826 (M.D. Ala. Sept. 28, 2017), which Wall cites as an example of where a court in this Circuit ruled that a warrant for electronically stored data was not sufficiently particularized, does not change this analysis.  That case dealt with the denial of warrant applications that post-dated the decision in *Blake*.  *Id.* at *1.  Not only was the *Blake* decision available to reviewing court, but since the warrants in that case had not been issued, much less executed, the *Leon* good-faith exception was not even ripe for consideration.

defendant. Accordingly, this matter as to this defendant is **CERTIFIED READY FOR TRIAL.**[4]

IT IS SO RECOMMENDED this 21st day of March, 2018.

_____
JOHN K. LARKINS III
United States Magistrate Judge

---

[4] Since matters pertaining to Wall's codefendants still are pending, the District Court is not required to place Wall's case on the trial calendar at this time. 18 U.S.C. § 3161(h)(6).